UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH
CRIMINAL ACTION NO. 5:17-CR-20-TBR

UNITED STATES OF AMERICA,                                                      PLAINTIFF

v.

JOHN E. PRINE,                                                                DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant John E. Prine's Motion to Suppress, [R. 34]. The United States of America responded, [R. 35]. The deadline for Prine to reply has passed. [*See* R. 33.] Thus, this matter is now ripe for adjudication. For the reasons stated herein, Prine's Motion to Suppress, [R. 34], is **DENIED**.

**BACKGROUND**

On October 6, 2016, Magistrate Judge Lindsay authorized a search and seizure warrant to be executed on or before October 16, 2016 at the residence of John E. Prine. [*See* R. 27 at 2, 15 (Search and Seizure Warrant).] According to the affidavit of Special Agent Theodore R. Curtis III of the United States Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations (HSI), ("Affidavit"), on or about July 11, 2016, Canadian law enforcement informed HSI Attaché Ottawa, Ontario that Kik Messenger[1] user "mike.wowie" uploaded a single image of child pornography from a specific Internet Protocol ("IP") address. [*Id*. at 14; R. 34 at 1 (Prine Motion to Suppress).] HSI Attaché Ottawa then issued a subpoena to Road Runner/Time Warner Cable for that subscriber's information, connected to that specific IP address, on or about July 15, 2016. [*Id*.] On or about July 18, 2016,

---

[1] The Affiant explains that Kik messenger is "an instant messaging program that allows users to transmit and receive content, such as messages, photographs, and videos, to and from other users." [R. 27 at 18.] Furthermore, Kik messenger allows "users to preserve anonymity." [*Id*.]

1

Time Warner responded with the subscriber name, address, active date, and deactivate date. [*Id*. at 14-15.] The subscriber was John Prine, who activated the service on January 13, 2013, and Prine's account was "still active." [*Id*.] Then, on or about September 8, 2016, HSI Attaché Ottawa forwarded this information to HSI Bowling Green, Kentucky. [*Id*. at 15.] Special Agent Curtis ("Affiant") reviewed the image uploaded into Kik Messenger and described it as follows:

> The image depicts sexually explicit conduct and child pornography in that it constitutes the lascivious exhibition of the vagina of a prepubescent female. More particularly, the image depicts an approximately 8-12 year old female, completely nude, with outstretched arms. The image shows from approximately the child's elbows down to the mid-thigh region (the remainder of her arms and legs being out of frame) and exhibits the child's breasts and vagina.

[*Id*.] On or about September 21, 2016, Affiant requested Prine's driver's license information from Kentucky State Police (KSP), who responded with Prine's address on or about September 22, 2016. [*Id*.]

The Affiant states that "Paragraphs 1 through 17 of this Affidavit, including a redacted copy of the image detailed in paragraph 15, were reviewed by United States Magistrate Judge Lanny King during the week of September 26-September 30, 2016. Magistrate Judge King declined to sign the search warrant at that time." [*Id*. at 16.] According to the Affiant, Magistrate Judge King was not in the Western District of Kentucky upon the date of submission of the revised affidavit and search warrant, so the documents were submitted to Magistrate Judge Lindsay "by procedure agreed upon by Magistrate Judge King and the reviewing Magistrate." [*Id*. at 16 n.3.] The parties dispute whether the draft of the affidavit presented to Magistrate Judge Lindsay was significantly different from the draft previously submitted to Magistrate Judge King. [*See* R. 34 at 9; R. 35 at 3 (United States Response).]

On October 12, 2016, the search warrant was executed at the residence of John Prine, where a number of items listed in the search warrant were seized and later examined. [R. 34 at 2;

2

R. 35 at 3.] Thereafter, Prine was indicted in this court for one count of knowingly receiving child pornography in violation of 18 U.S.C. §§ 2252A(a)(2)(B) and 2252A(b)(1) and one count of knowingly accessing, with intent to view, child pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and 2252A(b)(2). [R. 1 at 1-2 (Indictment).] Prine now moves to suppress "the search warrant and corresponding search of the Defendant's real and personal property." [R. 34 at 1.]

## STANDARD

The Fourth Amendment to the United States Constitution protects individuals against unreasonable searches and seizures. U.S. CONST. amend IV. To protect that interest, the Fourth Amendment requires that a search warrant issue only upon a showing of probable cause. *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

Probable cause for a search warrant exists where, based on the totality of the circumstances, the affidavit in support of the warrant provides the issuing magistrate a "substantial basis . . . to believe 'there is a fair probability that contraband or evidence of a crime will be found 'in a particular place.'"" *United States v. McNally*, 327 F. App'x 554, 556 (6th Cir. 2009) (quoting *Gates*, 462 U.S. at 238); *United States v. King*, 227 F.3d 732, 742 (6th Cir. 2000)). "To justify a search, the circumstances must indicate why evidence of illegal activity will be found in a particular place." *United States v. Carpenter*, 360 F. 3d 591, 594 (6th Cir. 2004) (en banc). That is, there must be a "nexus between the place to be searched and the evidence sought." *Id*. (quoting *United States v. Van Shutters*, 163 F.3d 331, 336–37 (6th Cir. 1998)). Thus, in order for a magistrate to determine probable cause, "the affidavit must contain adequate supporting facts about the underlying circumstances to show that probable cause exists for the

3

issuance of the warrant." *United States v. Smith*, 182 F.3d 473, 477 (6th Cir. 1999) (citing *Whiteley v. Warden*, 401 U.S. 560, 564 (1971)).

The Magistrate Judge's determination that probable cause exists is entitled to "'great deference.'" *Gates*, 462 U.S. at 236; *accord United States v. Allen,* 211 F.3d 970, 973 (6th Cir.2000). "[A] hypertechnical critique of warrants would only, in the end, encourage warrantless searches, undermining the very Fourth Amendment right such an approach would seek to protect." *Id*. "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238. The "duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." *Id*. at 238–39. "In making this determination, the Court considers only the information that was before the issuing judge-in other words, only what is contained within the four corners of the supporting affidavit." *United States v. Downsbrough*, No. 3:13-CR-61, 2013 WL 5781570, at *8 (E.D. Tenn. Oct. 24, 2013) (citing *United States v. Hatcher*, 473 F.2d 321, 323 (6th Cir. 1973)).

To deter future violations of the Fourth Amendment, the usual remedy for searches made with a defective warrant is suppression. *E.g., United States v. Woodbury,* 511 F.3d 93, 99 (1st Cir. 2007). "Courts should not, however, suppress 'evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant.'" *United States v. Carpenter*, 360 F.3d 591, 595 (6th Cir. 2004) (quoting *United States v. Leon,* 468 U.S. 897, 922 (1984)). In other words, "the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion." *Leon*, 468 U.S. at 922; *accord United States v. Richards,* 659

F.3d 527, 542 (6th Cir. 2011). Still, there are four exclusions to *Leon's* good-faith exception: (1) "when the magistrate . . . was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth"; (2) "where the issuing magistrate wholly abandoned his [detached and neutral] judicial role"; (3) where the affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) where a warrant is "so facially deficient—i.e., in failing to particularize the place to be searched or the thing to be seized—that the executing officers cannot reasonable presume it to be valid." *Leon,* 468 U.S. at 923.

## DISCUSSION

In his Motion to Suppress, Prine asks the Court "to suppress the search warrant and corresponding search of the Defendant's real and personal property." [R. 34 at 1.] In support of this motion, Prine argues that the search warrant did not establish probable cause for two reasons: (1) it did not illustrate a nexus between the place to be searched and the evidence to be sought and (2) the uploaded image is not child pornography. [*Id*. at 2-5.] Also, Prine contends that the information in the affidavit was stale, [*Id*. at 5-8], and the second search warrant application is barred by res judicata, [*Id*. at 8-11]. The Court shall address each of Prine's arguments in turn.

**A. Whether a Nexus was Established by the Affidavit**

As previously explained, in order for probable cause for a search warrant to exist, the affidavit in support of the search warrant must establish a "nexus between the place to be searched and the evidence sought." *Van Shutters*, 163 F.3d at 336–37. Without providing case law with which to compare the affidavit at issue, Prine argues that the "very general facts" listed in the affidavit did not establish a nexus and "the only minimal nexus that the affidavit presented was the IP address that was connected to the Kik account was registered to the Defendant." [R. 34 at 3.] Furthermore, he contends that the Kik account was registered under a different name, and the

5

email address used to register the Kik account "does not establish a nexus with the Defendant or his address." [*Id*.][2] The United States responds that under the factors provided by the Sixth Circuit, there is a nexus between Prine's residence and the image of child pornography. [R. 35 at 7-8.] The Court agrees with the United States.

The Sixth Circuit has stated:

> [A] sufficient nexus between illegality and a defendant's residence was created where an affidavit established that: (1) child pornography was transferred to police from a specific IP address; (2) that IP address was registered to the defendant's residential address; and (3) the defendant actually lived at that address. We rejected the defendant's argument that the IP address alone was an insufficient nexus despite the possibility that IP addresses are not always accessed at their registered residential addresses. [*United States v. Hinojosa,* 606 F.3d 875, 885 (6th Cir.2010)] (citing *United States v. Lapsins,* 570 F.3d 758, 767 (6th Cir.2009); *United States v. Wagers,* 452 F.3d 534, 540 (6th Cir.2006)).

*Gillman*, 432 F. App'x at 515. Here, the affidavit satisfied each of these elements. First, Canadian law enforcement informed HSI Attaché Ottawa, Ontario that Kik Messenger user "mike.wowie" upload child pornography from a specific Internet Protocol ("IP") address. [R. 27 at 14.] Second, in response to a subpoena, Time Warner Cable informed HSI Attaché Ottawa that the IP address belonged to John Prine and provided his home address. [*Id*. at 15.] Furthermore, Time Warner Cable informed the authorities that the internet was activated January 13, 2013, and the service was currently still active. [*Id*.] HSI Attaché Ottawa forwarded this information to HSI Bowling Green, Kentucky. [*Id*.] Third, upon request to Kentucky State Police (KSP), KSP informed the Affiant that Prine's driver's license reported the same address as the residence provided by Time

---

[2] Prine also argues that Prine possibly used an open wireless network, and, therefore, someone else could have used his network to register the Kik account and upload the image. [R. 34 at 3.] The Sixth Circuit has previously rejected this argument. *United States v. Gillman*, 432 F. App'x 513, 515 (6th Cir. 2011) (citing *United States v. Terry,* 522 F.3d 645, 648 (6th Cir. 2008) ("[Defendant] is correct—he could have used a wireless network and someone else could have accessed that network and shared child pornography. This possibility, however, does not negate the fair probability that child pornography emanating from an IP address will be found on a computer at its registered residential address.").

Warner Cable. [*Id.*] Thus, the IP address established a sufficient nexus between the image Pine uploaded and Pine's residence and computer. *Gillman*, 432 F. App'x at 515.

### B. Whether the Image is Child Pornography

Prine argues that the government did not establish probable cause in the search warrant affidavit because the image relied upon is not actually child pornography. [R. 34 at 5.] Under 18 U.S.C. § 2256(8)(A), "child pornography" is defined as "any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where—(A) the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct . . . ." 18 U.S.C. § 2256(8)(A). Amongst several possible definitions, § 2256 defines "sexually explicit conduct" as the actual or simulated "lascivious exhibition of the genitals or pubic area of any person . . . ." 18 U.S.C. § 2256(2)(A)(v). Here, Prine contends that the "picture herein is not sexually explicit nor [a] lascivious exhibition of the genitals or pubic area." [R. 34 at 4.] In furthering this argument, Prine cites the six part test[3] for determining whether an image is "lascivious" that was adopted by the Sixth Circuit in *United States v. Brown*, 579 F.3d 672, 680 (6th Cir. 2009).

As an initial matter, the Court notes that the question of "whether an image contains a lascivious exhibition is a question of fact for the jury . . . ." *Evers v. United States*, No. 17-5419, 2017 WL 8794876, at *2 (6th Cir. Oct. 27, 2017) (citing *United States v. Campbell*, 81 F. App'x 532, 536 (6th Cir. 2003)); *see also Evers v. United States*, No. 13-2690, 2017 WL 1011499, at *6

---

[3] In *Brown*, the Sixth Circuit adopted the six factor test of *United States v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986). The relevant factors include: "1) whether the focal point of the visual depiction is on the child's genitalia or pubic area; 2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity; 3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child; 4) whether the child is fully or partially clothed, or nude; 5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity; 6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer." *Brown*, 579 F.3d at 680 (quoting *Dost*, 636 F. Supp. at 832).

7

(W.D. Tenn. Mar. 14, 2017), certificate of appealability denied, No. 17-5419, 2017 WL 8794876 (6th Cir. Oct. 27, 2017) ("[L]asciviousness generally is a question of fact to be tried by the jury, not determined by the Court before the trial commences."); *United States v. Frabizio*, 459 F.3d 80, 88 (1st Cir. 2006) ("No other circuit court, as best we can tell, has ever approved the use of the Dost factors in a pretrial proceeding to remove the consideration of the lasciviousness of an image from the jury."). Although the consideration of the *Dost* factors is relevant in assessing the probable cause determination, "an affidavit need not fully comport with the *Dost* standards in order to establish probable cause . . . ." *United States v. Wagner*, No. 4:13-CR-32, 2015 WL 3627007, at *2 n.1 (E.D. Tenn. June 9, 2015); *Brown*, 579 F.3d at 680 ("In applying Dost, however, we have noted that 'this list is not exhaustive, and an image need not satisfy every factor to be deemed lascivious.'"); *Frabizio*, 459 F.3d at 87 (emphasizing that the *Dost* factors are not "the equivalent of—or established the limits of—the statutory term 'lascivious'"); *United States v. Hill*, 459 F.3d 966, 972 (9th Cir. 2006) ("The *Dost* factors can be a starting point for judges to use in determining whether a particular image is likely 'so presented by the photographer as to arouse or satisfy the sexual cravings of a voyeur.'").

Ultimately, the question before the Court is whether, based on the totality of the circumstances, the affidavit in support of the warrant provided the issuing magistrate a "substantial basis . . . to believe 'there is a fair probability'" that images involving the "lascivious exhibition of the genitals or pubic area" of a minor could be found at Prine's residence. *McNally*, 327 F. App'x at 556 (quoting *Gates*, 462 U.S. at 238); *King*, 227 F.3d at 742. The affidavit in question thoroughly considered the *Dost* factors, finding that all but the second factor weighed in favor of the image being "lascivious." [R. 27 at 16-18.] Although the United States and Prine agree on the second factor, Prine disputes the analysis of the first and third factors in the affidavit. [R. 34 at 4-5.]

8

Under the first factor, Prine asserts that the "focal point" of the picture is not the female's genitalia or breasts because there is no "close up" on the breasts or genitalia and no proof that the image was altered to focus on those areas. [R. *Id.* at 4.] The Sixth Circuit has reasoned that in order for the breasts or genitalia to be the "focal point" of a picture, they need only be "at the center of the photograph." *Brown*, 579 F.3d at 681. Thus, the Court disagrees with Prine's implication that the images require a "close up" on the breasts or genitalia in order to be a "focal point" of the photograph.

Under the third factor, Prine argues that the child's pose is not unnatural or inappropriate. [R. 34 at 5.] On the contrary, the affidavit asserts that the child's pose in the nude with her arms outstretched is "highly unnatural and inappropriate." [R. 27 at 17.] Neither party cites case law in support of their position, nor was the Court able to find precedent with a similar factual situation. Thus, it appears that this factor is debatable. However, the affidavit still thoroughly analyzed all of the *Dost* factors—instead of merely providing a conclusory statement[4]—with which Prine only disputed two of the factors. Furthermore, unlike previous cases in which magistrate judges purely relied on the descriptions of the images provided in the affidavit,[5] it is undisputed that the Magistrate Judge viewed the image, in addition to reading the description, before deciding to authorize the search warrant. [*See* R. 34 at 9; R. 35 at 4.] Beyond the *Dost* factors, the Court notes that the affidavit also states, according to the affiant's research and training, "Kik

---

[4] *See, e.g., Downsbrough*, No. 3:13-CR-61, 2013 WL 5781570, at *11 (finding that "the affiant's description of the alleged pornographic image must be sufficiently detailed to allow the issuing judge to make an independent determination of whether the image is child pornography, rather than relying solely on the affiant's conclusory statement that it is"); *United States v. Pavulak*, 700 F.3d 651, 661 (3d Cir. 2012) (finding that "'insufficiently detailed or conclusory description' of the images is not enough"); *United States v. Lowe*, 516 F.3d 580, 586 (7th Cir. 2008) (finding that a judge need not look at the images described in the affidavit in order to determine probable cause if there is a "detailed verbal description"); *United States v. Brunette*, 256 F.3d 14, 18 (1st Cir. 2001) ("A judge cannot ordinarily make this determination [of probable cause] without either a look at the allegedly pornographic images, or at least an assessment based on a detailed, factual description of them.").
[5] *See, e.g., Downsbrough*, No. 3:13-CR-61, 2013 WL 5781570 (E.D. Tenn. Oct. 24, 2013); *Pavulak*, 700 F.3d 651 (3d Cir. 2012); *Lowe*, 516 F.3d 580 (7th Cir. 2008); *Brunette*, 256 F.3d 14, 18 (1st Cir. 2001).

Messenger is commonly utilized by child pornographers to transmit and/or receive videos and photographs that depict 'sexually explicit conduct.'" [R. 27 at 18.] Therefore, when the Court considers the description of the image, along with the fact that the Magistrate Judge viewed the image and the Affiant's allegation about Kik messenger, the Court gives "great deference" to the Magistrate Judge's determination and finds that the Magistrate Judge's finding of probable cause was justified. *Allen,* 211 F.3d at 973.

**C. Whether the Information in the Affidavit was Stale**

An affidavit supporting a search warrant must contain "facts so closely related to the time of the issuance of the warrant as to justify a finding of probable cause at that time." *Sgro v. United States*, 287 U.S. 206, 210 (1932). "Once the incriminating information contained in an affidavit for a search warrant becomes too old, or 'stale,' such information may not be used in the determination of probable cause." *United States v. Hampton*, No. 3:10-CR-39-C, 2010 WL 4294677, at *5 (W.D. Ky. Sept. 10, 2010), report and recommendation adopted, No. 10-39-JBC, 2010 WL 4284953 (W.D. Ky. Oct. 22, 2010), aff'd, 504 F. App'x 402 (6th Cir. 2012) (citing *United States v. Frechette*, 583 F.3d 374, 377 (6th Cir.2009)). In the matter at hand, Prine argues that the information contained in the affidavit was stale. [R. 34 at 7.] Whether the information contained in a search warrant affidavit has become stale requires more than solely "counting the days on a calendar . . .." *United States v. Spikes,* 158 F.3d 913, 923–24 (6th Cir. 1998). The Sixth Circuit outlined four factors to consider when analyzing staleness:

> 1) "the character of the crime (chance encounter in the night or regenerating conspiracy?)"
> (2) "the criminal (nomadic or entrenched?)"
> (3) "the thing to be seized (perishable and easily transferrable or of enduring utility to its holder?)"
> (4) "the place to be searched (mere criminal forum of convenience or secure operational base?)."

*United States v. Abboud*, 438 F.3d 554, 572–73 (6th Cir. 2006) (quoting *Andresen v. State*, 24 Md. App. 128, 331 A.2d 78, 106 (Md. Ct. Spec. App.1975)). Prine provides four brief arguments in support of this allegation, not once citing to any case law for support or comparison. [R. 34 at 7.] The Court will address each argument in turn.

First, Prine argues the affidavit was "per se stale because of the amount of time that elapsed between the evidence being obtained by the government and the date search warrant was signed." [*Id*. at 7.] Prine states that there was a span of 88 days between Kik becoming aware of the image and the search warrant being signed, as well as a span of 94 days, or perhaps 126 days, between the image being uploaded and the search being conducted. [*Id*. at 6.] As previously mentioned, the decision of whether the information contained in a search warrant affidavit has become stale requires more than merely counting the days on a calendar. *See Spikes,* 158 F.3d at 923–24. Furthermore, as cited by the United States, the Sixth Circuit has stated that child pornography is "not a fleeting crime" and can have an "infinite life span" due to the fact that the image files "can be easily duplicated and kept indefinitely even if they are sold or traded." *Frechette*, 583 F.3d at 379 (citing Terry, 522 F.3d at 650 n.2). The Sixth Circuit has consistently ruled that a time span of over 126 days between the police observing the sharing of child pornography and execution of the search warrant did not cause the information in the affidavit to be stale. *See United States v. Hampton*, 504 F. App'x 402, 404 (6th Cir. 2012) (finding the information to not be stale after ten moths); *Gillman*, 432 F. App'x at 515 (not stale after five months); *United States v. Lewis*, 605 F.3d 395, 402 (6th Cir. 2010) (not stale after over seven months). Thus, the Court disagrees with Prine's first argument.

Second, Prine contends that there was no evidence in the affidavit that this potential crime was a "regenerating crime." [R. 34 at 7.] He states that this was only a single image, not a

collection or website of child pornography. [*Id*.] As previously explained, "[f]or the first factor, we have held that 'child pornography is not a fleeting crime' and it is a crime that is 'generally carried out in the secrecy of the home and over a long period.'" *United States v. Elbe*, 774 F.3d 885, 890 (6th Cir. 2014) (citing *Frechette*, 583 F.3d at 378). As the Affiant emphasized, according to his experience and training, child pornographers often retain pictures for many years, suggesting that this was not a "fleeting crime" or a "chance encounter." [R. 27 at 13.] Thus, despite Prine's arguments to the contrary, the Court finds that the affidavit satisfies the first factor of the staleness test.

Third, Prine misconstrues the second factor to involve the question of whether the *evidence* is "entrenched" or "nomadic," [R. 34 at 7], when, in fact, the second factor concerns whether the alleged *criminal* is "entrenched" or "nomadic." *See Abboud*, 438 F.3d at 572–73. What Prine appears to argue is the third factor: whether the thing to be seized is "perishable and easily transferrable or of enduring utility to its holder." Once again, the Sixth Circuit has found that child pornography has an "infinite life span." *Gillman*, 432 F. App'x at 515. Although it may be easy to transfer, it is not perishable. In fact, "even after its deletion, child pornography can still be discovered on a computer's hard drive." *Terry,* 522 F.3d at 650 n. 2. Thus, the Court disagrees with Prine's argument, and finds the affidavit sufficient under the third element of the staleness test.

Last, Prine compares the search warrant at hand to a search warrant concerning marijuana, arguing that just as a "search warrant application in a drug investigation, based upon a single limited incident of alleged criminal conduct that occurred almost three months prior, would not be granted," neither should the application at hand. [R. 34 at 8.] The Sixth Circuit has expressly rejected such arguments: "Unlike drugs, guns and computers are objects that generally remain in the suspect's possession after commission of the crime, and therefore it is reasonable to believe

12

those possessions to be stored at the suspect's residence, absent evidence to the contrary." *Peffer v. Stephens*, 880 F.3d 256, 273 (6th Cir. 2018); *Frechette*, 583 F.3d at 378 (6th Cir. 2009) (holding that, unlike warrants involving drugs, sixteen month old information in a warrant involving child pornography might not be stale because "the images can have an infinite life span"). Therefore, like the Sixth Circuit, the Court rejects Prine's argument.

**D. Res Judicata**

Lastly, Prine argues that the doctrine of res judacata should invalidate the agent's submission of the search warrant application to Magistrate Judge Lindsay after Magistrate Judge King previously denied the petition. The United States responds that res judicata is not applicable to this situation. The Court agrees.

The doctrine of res judicata prohibits a plaintiff from relitigating a claim that was asserted or which could have been asserted in earlier litigation against the same defendants or their privies. *Federated Dep't Stores v. Moitie*, 452 U.S. 394, 398 (1981); *United States v. McMichael*, 525 F. App'x 388, 392 (6th Cir.2013). The elements of res judicata are: "(1) there is a final decision on the merits of the first action by a court of competent jurisdiction; (2) the second action involves the same parties, or their privies, as the first; (3) the second action raises an issue actually litigated or which should have been litigated in the first action; and (4) there is identity of claims." *Walker v. General Tel. Co.*, 25 F. App'x 332, 336 (6th Cir. 2001) (per curiam). Prine cites no case law in support of his theory that res judicata could apply to a magistrate judge's denial of a search warrant application, nor does he apply any of the elements involved in a claim of res judicata. Although it has not been addressed in the Sixth Circuit, the Middle District of Georgia stated on the matter:

> The only Federal Court of Appeal to consider the question found that the Fourth Amendment "on its face does not prohibit the government from seeking a second

> magistrate's approval to search when another magistrate denies a search warrant" and flatly rejected "[a] blanket rule barring the government from resubmitting a warrant application to a second magistrate." *United States v. Pace,* 898 F.2d 1218, 1230–31 (7th Cir.1990).

*United States v. McCoy*, 678 F. Supp. 2d 1336, 1349 (M.D. Ga. 2009). Furthermore, the court stated that res judicata did not apply because "the search warrant 'claim' was *not* fully and fairly litigated" and there was no "final order of judgment." *Id*. at 1348. Similarly, the "claim" here was not fully and fairly litigated, as the defendant was not involved in the decision regarding the search warrant, and the Magistrate Judge never produced a "final order of judgment" on the matter. Thus, the Court finds that the doctrine of res judicata does not apply to the matter at hand.

### E. Good Faith Exception

The United States argues, without rebuttable from Prine, that even if the affidavit did not establish probable cause for the search, "the facts cited in the affidavit, and the reasonable inferences drawn from the affidavit, established sufficient probable cause to justify objectively reasonable good faith reliance on the warrant." [R. 35 at 13.] The Court agrees.

As previously explained, "evidence may be saved from suppression where an officer acts in objective good faith in executing an otherwise defective warrant." *Leon,* 468 U.S. 897, 905, 922 (1984). Furthermore, "the good-faith exception is premised on the idea that 'the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates.'" *United States v. Rose*, 714 F.3d 362, 369 (6th Cir. 2013). However, there are four exclusions to *Leon's* good-faith exception: (1) "when the magistrate . . . was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth"; (2) "where the issuing magistrate wholly abandoned his [detached and neutral] judicial role"; (3) where the affidavit is "so lacking in indicia of probable

cause as to render official belief in its existence entirely unreasonable"; and (4) where a warrant is "so facially deficient—i.e., in failing to particularize the place to be searched or the thing to be seized—that the executing officers cannot reasonable presume it to be valid." *Leon,* 468 U.S. at 923.

Although Prine makes no specific allegations in regard to the *Leon* good-faith exception, one could interpret his previous arguments as a claim that the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."[6] The United States preemptively responds to this potential argument by asserting that the affidavit at hand is not the "bare bones" type of affidavit normally considered to lack probable cause. [R. 35 at 13-16.] The Court agrees.

"Affidavits that are 'so lacking in indicia of probable cause' have come to be known as 'bare bones' affidavits. Such an affidavit contains only 'suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge . . ..'" *United States v. Laughton*, 409 F.3d 744, 748 (6th Cir. 2005) (internal citations omitted). "[T]he standard by which an affidavit should be judged for purposes of the good faith exception 'is a less demanding showing than the substantial basis threshold required to prove the existence of probable cause in the first place.'" *Id.* (citing *United States v. Carpenter*, 360 F.3d 591, 595 (6th Cir.2004) (en banc)). Here, the affidavit contained information demonstrating that Prine had uploaded child pornography on Kik Messenger, and the Affiant verified himself as a reliable source of information by citing his experience, training, and research. [R. 27 at 8-19.] The United States compares this affidavit to that of *Rose*, in which the Sixth Circuit held that even though the affidavit at issue failed to provide a connection

---

[6] The Court notes that Prine has presented no evidence to support an argument that the Magistrate Judge was misled, wholly abandoned his judicial role, or that the warrant failed to "particularize the place to be searched or thing to be seized."

15

between the evidence sought and the residence to be searched, the officer "exercised good faith and acted in objectively reasonable reliance on the warrant's legality" in conducting the search. 714 F.3d at 369. Specifically, the court found that "it would be entirely reasonable to conclude that either" the testimony of the crimes that occurred in the defendant's home or the detective's independent investigation into the victims' allegations revealed that the defendant lived at the residence to be searched. *Id*. Furthermore, the Sixth Circuit reasoned that "[r]ather than fears of police misconduct, this case merely raises concerns about sloppiness in drafting affidavits within the Cincinnati Police Department." *Id*. Similarly, in the matter at hand, Affiant related that he was a trained and experienced HSI special agent in the field of sexual exploitation of children and child pornography, and that he conducted an investigation into Prine's actions and current residence. [R. 27 at 8; 14-15.] Moreover, like in *Rose*, the issue at hand appears to be more of a concern about sloppy drafting rather than that of police misconduct. Thus, the Court finds that law enforcement had a "reasonable basis to believe that the information that was submitted supported the issuance of a search warrant." *Carpenter,* 360 F.3d at 595.

In summary, the Court finds that the search warrant was supported by probable cause, but, even if there was not probable cause, law enforcement acted in good faith in executing the warrant.

## CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED**: Prine's Motion to Suppress, [R. 34], is **DENIED**.

**IT IS SO ORDERED.**


cc: Counsel of Record